(No. 48700.—

L. GOODMAN *et al.*, Appellants, v. THE REGIONAL TRANSPORTATION AUTHORITY, Appellee.

*Announced Aug. 25, 1976.—Opinion filed Oct. 1, 1976.*

Richard M. Kates, of Chicago, for appellants.

Don H. Reuben, James C. Munson and James A. Klenk (Kirkland & Ellis, and Jeremiah Marsh and Michael Schneiderman, of Hopkins, Sutter, Mulroy, Davis & Cromartie, all of Chicago, of counsel), for appellee.

William J. Scott, Attorney General, of Chicago (John D. Hastings, Imelda Terrazino, and William R. Wallin, Assistant Attorneys General, all of Chicago, and J. Calvin Bostian, Special Assistant Attorney General, of Springfield, of counsel), for *amicus curiae* the People of the State of Illinois.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, L. Goodman and M. Shackey, "individually and as representatives of a class of citizens and taxpayers in the Regional Transportation Authority Metropolitan region similarly situated," filed this action in the circuit court of Cook County seeking a declaratory judgment that the annual budget ordinance enacted for the fiscal year 1977 by defendant, the Regional Transportation Authority, was invalid, an injunction prohibiting defendant from expending funds budgeted under the ordinance and other relief. Defendant moved to dismiss, and the circuit court upon allowing the motion entered judgment "on the merits and with prejudice." We allowed plaintiffs' motion for direct appeal. Rule 302(b).

Defendant, created under the provisions of the Regional Transportation Authority Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 701.01 *et seq.*), is "a unit of local government, body politic, political subdivision and municipal corporation" (ch. 111 2/3, par. 701.04) established to provide public transportation services, facilities and funding in the northeastern counties of Cook, Du Page, Kane, Lake, McHenry and Will (ch. 111 2/3, par. 701.02) and is governed by a board of nine directors (ch. 111 2/3, par. 703.01). Section 4.01 (ch. 111 2/3, par. 704.01) in pertinent part provides:

> "The Board shall control the finances of the Authority. It shall by ordinance appropriate money to perform the Authority's purposes and provide for payment of debts and expenses of the Authority. *** The fiscal year of the Authority shall begin on July 1st and end on the succeeding June 30th. *** [T]he Board shall adopt its annual budget ordinance prior to the beginning of each fiscal year. The ordinance may be adopted only upon the affirmative votes of two-thirds of its then Directors. ***"

The allegations in plaintiffs' complaint are incorp-

orated by reference from a petition for *mandamus* filed by defendant in this court and subsequently withdrawn and for purposes of the motion to dismiss are taken as true. *Acorn Auto Driving School, Inc. v. Board of Education,* 27 Ill. 2d 93, 96.

On June 30, 1976, a proposed budget ordinance for the 1977 fiscal year was presented for adoption at a meeting of the board of directors. With all directors in attendance, five voted to adopt the proposed ordinance and four voted against adopting it. Section 4.01 requires the affirmative votes of two-thirds of the nine directors for adoption, and the ordinance therefore failed of passage by one vote.

At a meeting of the board held on July 19, 1976, attended by all nine directors, the four members who had earlier voted against the adoption of the proposed budget ordinance indicated that they wished to move to change their votes cast against adoption of the budget ordinance at the meeting held on June 30, 1976; the directors thereupon voted unanimously to suspend the rules to permit the change of vote; the four directors who had previously voted against the adoption of the proposed budget ordinance then moved to change their votes previously cast against the adoption of the proposed budget ordinance "from 'no' to 'yes' as of June 30, 1976"; the motion carried by the unanimous vote of the directors, the votes of the four directors who had previously voted negative "were recorded as affirmative as of June 30, 1976," and the proposed budget ordinance was "recorded 'adopted' on June 30, 1976."

At that same July 19 meeting a motion to suspend the rules to allow an amendment to the budget ordinance "recorded 'adopted' on June 30, 1976," and a motion to amend the budget ordinance, were carried by the unanimous vote of the directors. A motion to

suspend the rules to allow a motion to adopt the amended budget ordinance *"de novo"* as of July 19, 1976, carried by the affirmative votes of all nine directors. By unanimous vote, the board adopted an ordinance expressing its intent that the budget ordinance adopted *"de novo"* be deemed its 1977 fiscal year budget if it is "held valid by the court."

Plaintiffs contend that the provision contained in section 4.01 of the Regional Transportation Authority Act that the annual budget ordinance be adopted prior to July 1 is mandatory and that the budget ordinance adopted subsequent to June 30 is invalid. Defendant contends first that the actions taken at the meeting held on July 19, 1976, effected the adoption of the previously rejected budget ordinance as of June 30, 1976. It contends too that the provision contained in section 4.01 of the Act is directory and that the ordinance, even if held to be adopted after June 30, 1976, is valid. In an *amicus curiae* brief the Attorney General suggests that under the applicable decisions we should hold that the June 30 date "is directory in the sense that the 1977 Fiscal Year Budget Ordinance may be adopted on July 19, 1976; that an ordinance so adopted is valid; and that the June 30 date is mandatory in the sense that it imposes a duty of obedience on the Board and must be obeyed."

We consider first defendant's contention that the suspension of the rules and the change of votes by four directors at the July 19, 1976, meeting effected the adoption, as of June 30, 1976, of the previously rejected budget ordinance. Assuming *arguendo* that the board, on July 19, had authority to reconsider its vote taken on June 30 (see *City of Kankakee v. Small,* 317 Ill. 55; *People ex rel. MacMahon v. Davis,* 284 Ill. 439; 56 Am. Jur. 2d *Municipal Corporations* etc. sec. 352 (1971)), it is undisputed that the proposed budget

ordinance was not adopted on June 30, and the action of the board on July 19 does not serve to alter that fact.

The reason for the parties having so extensively briefed and argued the question whether the provision of section 4.01 is mandatory or directory and its pertinence to the validity of defendant's annual budget ordinance are demonstrated by the following language from *People ex rel. Agnew v. Graham,* 267 Ill. 426, 436-37:

> "The courts, in discussing questions similar to this, have frequently considered the question as to whether statutes regulating elections were mandatory or directory. A mandatory provision in a statute is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding. Directory provisions are not intended by the legislature to be disregarded, but where the consequences of not obeying them in every particular are not prescribed the courts must judicially determine them. In doing so they must necessarily consider the importance of the punctilious observance of the provision in question to the object the legislature had in view. If it be essential it is mandatory. (2 Lewis' Sutherland on Stat. Const. ——— 2d ed. ——— sec. 610.) No universal rule can be given to distinguish between directory and mandatory provisions. The controlling question in this as in all other rules of construction is, what was the intention of the legislature? Whether a statute is mandatory or directory does not depend upon its form but upon the legislative intention, to be ascertained from a

consideration of the entire act, its nature, its object and the consequences which would result from construing it one way or the other. (36 Cyc. 1157, and cases cited.) In general, statutes directing the mode of proceeding by public officers are deemed advisory, and strict compliance with their detailed provisions is not considered indispensable to the validity of acts done under them. (Endlich on Interpretation of Statutes, sec. 437.) The terms 'mandatory' and 'directory' may be convenient to distinguish one class of irregularities in election matters from the other. 'But, strictly speaking, all provisions of such laws are mandatory in the sense that they impose the duty of obedience on those who come within its purview, but it does not therefore follow that every slight departure therefrom should taint the whole proceedings with a fatal blemish. Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end.' "

Statutory provisions requiring that appropriation ordinances be adopted within a prescribed time have been held to be mandatory. (See, *e.g., People ex rel. Schlaeger v. Illinois Central R.R. Co.,* 396 Ill. 200; *People ex rel. O'Connell v. Chicago, Burlington and Quincy R.R. Co.,* 266 Ill. 150; *People ex rel. Smith v. McElroy,* 248 Ill. 574; *Riverside Co. v. Howell,* 113 Ill. 256.) The Regional Transportation Authority Act provides for the adoption, annually, by ordinance, of a Five Year Plan (section 2.01(c)); for preparation by defendant of a "proposed program and budget"; for prescribed action by the Director of the Illinois Bureau of the Budget to be taken by January 1, presentation

to the General Assembly and the Governor not later than February 1, for public hearings and finally for adoption of the annual budget ordinance. It is true, as defendant contends, that unlike the situations presented in *Schlaeger, O'Connell, Smith* and *Riverside,* no levy ordinance was required to be enacted by defendant subsequent to the adoption of the budget ordinance. We conclude, however, that the comprehensive statutory scheme for planning and budgeting and the provisions for action by State officials and the General Assembly require us to hold that the board of directors has no discretion as to whether it will adopt a budget ordinance and that the adoption of defendant's budget ordinance by June 30, 1976, was mandatory.

This brings us to the question as to the consequences intended by the General Assembly if, as here, the annual budget ordinance was not adopted within the time fixed by statute. Some possible alternatives are that the July 19 budget is invalid and (1) that no monies can be spent and defendant would not operate for a year; (2) that defendant would operate under the prior year's budget ordinance; or (3) that defendant would operate without a budget.

We have noted the statutory scheme for the preparation and implementation of Five Year Programs (section 2.01(b) and (c)), the broad authority to receive grants, loans and other funds from Federal and State sources (section 4.02) and to make additional appropriations and changes in the budget ordinance (section 4.01). We note further that the only taxes (see section 4.03) presently authorized are collectible through the State Department of Revenue, on a monthly reporting basis. Subparagraph (k) of section 4.03 provides:

"(k) Failure to adopt a budget ordinance or otherwise to ·comply with Section 4.01 of this Act or to adopt a Five-Year Program or otherwise to comply with paragraph (b) of Section 2.01 of this Act shall not effect [*sic*] the validity of any tax imposed by

the Authority otherwise in conformity with law." Ill. Rev. Stat. 1975, ch. 111 2/3, par. 704.03(k).

In view of the General Assembly's statement of "Findings and Purpose" contained in the Regional Transportation Authority Act (see section 1.02), the provisions for planning and budgeting, defendant's authority to seek sources of funds other than the taxes which it is authorized to impose and to change the ordinance and make additional appropriations, we conclude that although adoption of the budget ordinance by June 30, 1976, was mandatory, the General Assembly did not intend that failure to do so for a period of 19 days would render the ordinance invalid. We hold, therefore, that the budget ordinance adopted *"de novo"* on July 19, 1976, is valid.

We have considered plaintiffs' argument that if the late adoption of the budget ordinance is approved for this year, the same situation may occur year after year. The General Assembly enacted the provision which we have held to be mandatory, and it is the function of the General Assembly to determine the consequences of failure to comply with its mandate. We hold that invalidating the ordinance adopted 19 days late is not the appropriate means of enforcing the provision.

In their complaint plaintiffs also allege that in the budget ordinance defendant estimated income of $114,416,000 from the Public Transportation Fund, that the General Assembly had appropriated only $98,160,937 to defendant from that fund and asked alternatively that $16,225,063 of defendant's total appropriation be declared invalid. Citing *People ex rel. Schlaeger v. W. J. Dennis & Co.,* 397 Ill. 381, *People ex rel. Schlaeger v. Bunge Brothers Coal Co.,* 392 Ill. 153, and *People ex rel. Franklin v. Wabash R.R. Co.,* 387 Ill. 450, plaintiffs argue that "budget overages" are invalid. Those cases involved levies held to be invalid

because of inaccuracies in appropriation items and are clearly distinguishable. Defendant's budget ordinance, as adopted on July 19, 1976, estimated funds to be received from all sources during the fiscal year at $160,026,000, estimated funds available at the beginning of the fiscal year at $17,744,000 and budgeted expenditure of the entire $177,770,000. Although not stated in precisely that manner it is apparently plaintiffs' theory that defendant has budgeted $16,160,937 more than it will receive and that it cannot expend funds which it does not have. It does not appear, however, that defendant will not receive the sum of $160,026,000 estimated in the ordinance or that there is a "budget overage."

For the reasons stated the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*