STEVEN MINER, Plaintiff-Appellant, *v.* THE GILLETTE COMPANY, Defendant-Appellee.

First District (5th Division)    No. 79-1530

Opinion filed October 3, 1980.

Freeman, Atkins & Coleman, and Bernstein & Waller, both of Chicago (Robert S. Atkins, Kenneth P. Ross, Paul Bernstein, and Henry Waller, of counsel), for appellant.

Russell M. Baird, George A. Platz, and Shalom L. Kohn, all of Sidney & Austin, of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff brought this action on behalf of himself and a nationwide class action of persons alleging that defendant violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*) and breached its contractual obligation under Illinois law. This appeal was taken under Supreme Court Rule 308 from an interlocutory order of the circuit court dismissing the amended complaint insofar as it was brought in a representative capacity on behalf of nonresidents of

the State of Illinois. This court also granted leave to the parties to brief and argue on cross-appeal the issue of whether this action could be brought in a representative capacity in any respect. We affirm the judgment of the circuit court.

FACTS

Plaintiff brought his action on behalf of approximately 180,000 consumers residing throughout the United States alleging that they were unlawfully deceived by the Gillette Company (Gillette) in connection with the operation of the Accent Table Lighter Promotion.[1] Plaintiff alleged in count I of his complaint that Gillette fraudulently induced plaintiff class members[2] to purchase Cricket lighters knowing its promotional offer of a free Accent table lighter with the purchase of two Cricket lighters was deceptive in that Gillette knew it did not have an adequate supply of Accent table lighters to fill its orders. This practice is alleged to be prohibited by the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*). In count II of the complaint, plaintiff alleges Gillette's refusal to comply with the terms of its offer and supply class members with free Accent lighters constitutes a breach of contract under Illinois law.

Gillette asserts that it became aware in September 1978 that response to the Accent Table Lighter Promotion would exceed its expectations. It therefore ceased shipping further promotional material and added an additional 70,000 Accent lighters assembled from available components to its supply. Nevertheless, there was still a deficit of approximately 180,000 lighters. Gillette then refunded the 50-cent postage and handling charge, and sent a free regular Cricket lighter with a letter stating the Accent lighters had been exhausted and apologizing for the inconvenience.

Plaintiff was one of these consumers who received the Gillette letter. He filed suit on January 29, 1979. An amended complaint was filed in June 1979. In September 1979, the circuit court denied Gillette's motion to dismiss the action as a class action on behalf of Illinois residents, finding that the prerequisites of section 57.2 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.2) were satisfied, but granted Gillette's motion to dismiss the action as a class action on behalf of non-Illinois residents on the authority of *Spirek v. State Farm Mutual Automobile Insurance Co.* (1978), 65 Ill. App. 3d 440, 382 N.E.2d 111. The trial court recognized that its order limited membership in the plaintiff class solely to Illinois resi-

---

[1] The campaign commenced in April 1978. The mail-in offer details provide: "Purchase two cricket lighters. Send in the words 'Cricket by Gillette' from any two packages as your proof of purchase plus the enclosed certificate and 50¢ for postage and handling. Gillette will mail you a FREE CRICKET ACCENT TABLE LIGHTER."

[2] The class of injured persons includes 11,456 residents of the State of Illinois and 168,124 nonresidents for a total of 179,580 class members.

dents, and that this presented an important and unresolved question of law, and so certified the issue for immediate appeal pursuant to Supreme Court Rule 308. The court denied, however, Gillette's request to certify for immediate appeal under Rule 308 that part of the order which denied its motion to dismiss the Illinois class. Plaintiff submitted to this court an application for leave to appeal under Rule 308, which was denied on October 12, 1979. Plaintiff then filed a motion for direct appeal to the supreme court under Supreme Court Rule 302(b), which was denied on November 21, 1979. On November 23, 1979, plaintiff filed a petition with the supreme court for a motion to treat appellant's petition for leave to appeal pursuant to Supreme Court Rule 302(b) as an application for supervisory jurisdiction. The court then, in the exercise of its supervisory jurisdiction, ordered this court to grant plaintiff's application for leave to appeal. Consequently, in December 1979, we vacated our order of October 12, and allowed plaintiff's application for leave to appeal.

OPINION
Plaintiff argues that he should be allowed to bring this action as a class action suit on behalf of Illinois residents as well as on behalf of persons similarly situated residing outside the State of Illinois. Defendant contends this case does not justify invocation of class action procedures in any respect.

Plaintiff asks us to reconsider the legal propriety of the multistate class action and to reverse our decision in *Spirek v. State Farm Mutual Automobile Insurance Co.* (1978), 65 Ill. App. 3d 440, 382 N.E.2d 111, so that this action can proceed as such. In *Spirek*, we held that absent "minimum contacts" with an Illinois forum, an Illinois court could not render a binding *in personam* judgment over nonresident plaintiffs. The basis for the *Spirek* decision finds its support in the *International Shoe* doctrine which states that a nonresident is not subject to the jurisdiction of a State court unless he has certain "minimum contacts" or ties with the forum State. *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.

In *Spirek*, two Illinois residents sought to represent all State Farm policyholders, wherever located, who made defined medical payment claims. We refused to exercise such jurisdiction over all plaintiffs even though we had jurisdiction over defendant. In refusing to exercise jurisdiction, we discussed a number of due process and full faith and credit problems inherent in joining out-of-State plaintiffs: compelling plaintiffs to opt out of the class suit or risk a binding *in personam* judgment; no common question of law would predominate; numerous other States' laws would have to be applied; and any decision of the court would not be binding on persons beyond its jurisdiction which would subject any

judgment rendered to relitigation when enforcement was sought in a sister State's court.

Plaintiff relies on *Hoover v. May Department Stores* (1978), 62 Ill. App. 3d 106, 378 N.E.2d 762, *rev'd on other grounds* (1979), 77 Ill. 2d 93, 395 N.E.2d 541, *Schlosser v. Allis-Chalmers Corp.* (1978), 86 Wisc. 2d 226, 271 N.W.2d 879, and *Shutts v. Phillips Petroleum Co.* (1977), 222 Kan. 527, 567 P.2d 1292, as persuasive authority to allow nationwide plaintiff classes. These cases, however, are distinguishable. In *Hoover*, a class action was brought seeking relief for plaintiff charge account customers of defendant. The plaintiff sought to certify a class consisting of customers who resided in Illinois and Missouri. The class action was allowed even though a majority of its members resided outside the State of Illinois. It should be noted, though, that there were sufficient "minimum contacts" with Illinois as the vast majority of class members who were residents of Missouri shopped in defendant's stores both in Illinois and Missouri. Additionally, application of only two States' laws governed the class claims.

In *Shutts*, plaintiff sought to represent a class of gas royalty owners against the Phillips Petroleum Company to recover interest on "suspense royalties" attributed to gas produced from leases in a three-State area. The Kansas Supreme Court allowed the class action stating that the important element in exercising jurisdiction over a nonresident plaintiff is procedural due process which consists of notice, an opportunity to be heard, and where members' rights are protected by adequate representation. *Shutts*, at 1305.

But even in *Shutts*, there existed some "minimum contacts" with Kansas by virtue of a common interest in the equivalent of a "common fund" to claim damages for commingling and use of the suspense royalties by Phillips. Further, only three States' laws would have been in issue.

In *Schlosser*, a class of retired, salaried nonunion employees brought an action against defendant-employer for breach of a contractual obligation to provide noncontributory life insurance benefits to class members over age 65. The class action was allowed even though some members of the plaintiff class worked and retired in States other than Wisconsin. It was noted, however, that company policy decisions, including the one in question, emanated from the home office in Wisconsin. Thus, nonresident class members had some "minimum contacts" with the forum State. It appears that even in these cases which plaintiff cites as persuasive authority for multistate class actions there is still consistency with the "minimum contacts" doctrine.

The case at bar presents the same problems that we faced in *Spirek* and requires us to refrain from exercising jurisdiction to adjudicate the claims of nonresidents whose interest plaintiff seeks to represent. The Illinois class action statute requires: (1) that the class is so numerous that

joinder of all members is impracticable; (2) there are questions of fact or law common to the class which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. Ill. Rev. Stat. 1977, ch. 110, par. 57.2.

■■ It is apparent that the class plaintiff seeks to represent is so numerous as to make joinder impracticable. In addition, a common question of fact predominates over any question affecting only individual members, and as to Illinois residents, a common question of law predominates also. However, it is evident that no common question of law predominates as to nonresidents. These plaintiffs have *no* "contacts" with Illinois (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154), and to allow this action to proceed as a multistate class action would entail the application of the laws of the different States. Even where the statutory language of the different States' consumer fraud laws is similar to Illinois', the interpretation of this language may be construed differently by the courts of the various States. As such, the plaintiff may have difficulty in adequately representing the interests of all the purported class members. Thus, this proposed multistate class action, like the class action in *Spirek*, fails to meet the requirements of the Illinois class action statute. It must also be pointed out that any determination made by an Illinois court would have no binding effect beyond the jurisdiction of the Illinois courts and would be subject to relitigation in other jurisdictions whenever difficulty arose in enforcing the judgment in sister States' courts. Additionally, allowance of a multistate class action suit in Illinois would not necessarily bar similar actions in other States brought by other plaintiffs. As such, the practical utility of exercising jurisdiction and rendering a determination covering multistate claims is minimized. We are thus not persuaded that *Spirek* should be overruled to allow this action to proceed as a multistate class action.

We, therefore, affirm the trial court dismissal of the amended complaint insofar as it affects nonresident plaintiff members' claims.

We do, however reject Gillette's contention that this matter does not merit invocation of the class action device in any respect. Gillette asserts in its brief that:

"(1) the asserted claims plainly arise out of efforts of the defendant to benefit consumers, not to deceive or exploit them; (2) the defendant has, prior to institution of the litigation, voluntarily adjusted the asserted claims in a fair and reasonable manner; and (3) the asserted claims are so small that they are exceeded by the costs of adjudication and administration."

We believe that as to plaintiff members who reside in Illinois, the

requirements of the Illinois class action statute have been met and that the trial court did not err in denying the motion to dismiss in this regard. (*Spirek v. State Farm Mutual Insurance Co.* (1978), 65 Ill. App. 3d 440, 382 N.E.2d 111.) All well-pleaded facts are accepted as true on a motion to dismiss. *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634; *Goodman v. Regional Transportation Authority* (1976), 66 Ill. 2d 20, 360 N.E.2d 51.

The class of injured persons includes 11,456 Illinois residents which because of these numbers allegedly makes joinder impracticable. There are common questions of both law and fact which appear to clearly predominate as to Illinois residents. All Illinois plaintiff members allegedly performed in the same manner and suffered the same injury from Gillette's failure to perform. The basis of any lawsuit here would be the Consumer Fraud Act (Ill. Rev. Stat. 1977, ch. 121½, par. 261 *et seq.*) and Illinois contract law. The third requirement under the statute is that the representative party will fairly and adequately protect the interest of the class (*Steinberg*; Ill. Rev. Stat. 1977, ch. 110, par. 57.2 (a)(3)). Allegedly, Miner can fulfill this role since his interests and those of other Illinois plaintiff members would appear to be identical.

■■ Lastly, we deal with Gillette's argument that a class action is not appropriate because of the "de minimus" nature of the claims. We have allowed the maintenance of class action suits where the claims were small. See *Steinberg*, where a class action suit was allowed to recover a $15 application fee paid to a medical school in reliance on erroneously stated criteria for judging applications. See also *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040, where we allowed a class action suit for the unfulfilled portion of magazine subscriptions valued at under $10. All section 57.2(a)(4) of the Civil Practice Act requires is that "the class action is an appropriate method for the fair and efficient adjudication of the controversy" (Ill. Rev. Stat. 1977, ch. 110, par. 57.2(a)(4)). We believe that "this class action would best serve the 'economies of time, effort and expense and promote the uniformity of decision and accomplish the other ends of equity and justice sought be allowed in these actions'. [Citation.]" (*Spirek v. State Farm Mutual Insurance Co.* (1978), 65 Ill. App. 3d 440, 452, 382 N.E.2d 111, 119), and thus meet this requirement of the statute (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) Further, Gillette's assertion that it substituted one gratuity for another is untenable. There was no gratuity as Gillette did not give away the Accent lighter as a "gift." Consumers were required to fulfill the conditions of the offer by buying two Cricket lighters, sending in proofs of purchase plus 50¢ postage and handling.

Accordingly, we conclude that nonresidents of the State of Illinois

should not be included as members of plaintiff class, but that the court did not err in refusing to dismiss the action with regard to members of plaintiff class residing in Illinois. We do not intend to express any opinion as to the merits but limit same to the ruling as to the sufficiency of the complaint.

For the foregoing reasons, we affirm the order of the trial court dismissing the nonresident members of the class and allowing this suit to stand as a class action as to Illinois residents and remand for further proceedings consistent with this opinion.

MEJDA and LORENZ, JJ., concur.